Chief Judge, Your Honors, may it please the Court, my name is Wilson Fong. I represent the Plaintiff, Appellant Catherine Netter. In any manner, the statute says that participation in any manner in a Title VII investigation, proceeding or hearing, is protected, and this Court has long held that this clause sweeps broadly and protects even unreasonable and irrelevant activity. Your Honors, this Court has no overview which it should use to overturn the District Court and deny summary judgment. Ms. Netter was terminated for doing three things, for giving confidential documents as evidence to the EEOC, for giving confidential documents as evidence to a human resources investigator, and for giving confidential documents to her Title VII attorney as part of her case file. Each of these was a protected activity, and each of these was the express reason the defendant gave for terminating her. Would Your Honors like a recitation of the facts? Well, you may proceed as you wish, but I can assure you that the Court is pretty much custodial of the facts, but go ahead, proceed as you want. Yes, Your Honor. Your Honors, a retaliation claim is divided into three elements, a protected activity, an adverse action, and causation. Mr. Fong, you said that your client was terminated because she gave documents to three separate entities and or persons, but wasn't she in fact terminated because she took documents from her employer in violation of that employer's policy, and can't we just sever that activity from the admittedly protected, abstractly protected activity of using those documents in the proceedings? Why can't we just separate the two? Your Honor, the two cannot be separated because she only did one act. No, no, no. I mean, she did two things. She took documents, five separate files, personnel files, two of which she had direct access to and had some limited authority to use, but not in the manner contemplated, and then she had one of her colleagues take three additional personnel files to which she had no authority to use. That seems to me entirely inseparable from the act of using the documents in these various proceedings, and didn't we say in our Glover case that you can distinguish or separate acts? In that case, we talked about the difficulty of limiting activity with respect to testimony and that it was difficult to slice that balloon too thin, to use a phrase, but this seems to me entirely distinct. We've got these two separate acts, and no one is suggesting that you can't be aggressive in your prosecution of an EEOC complaint. We all recognize that, and participation activity is, in fact, virtually boundless, but there are some limits, and it's right to me that this case presents that limit. Your Honor, the distinct and separable idea that was presented in Glover contemplates that there is a separate and distinct act that an employee engages in. For example, take the cases that Glover itself cites. In Jackson v. St. Joseph State Hospital, the employee filed a charge, protected activity, and then tried to get a co-worker to change their statement to the EEOC. The co-worker, the employee, was terminated for the second act, not for the protected activity of filing the EEOC charge. Well, if I could follow on that and build on my colleague's question, do you dispute that your client's review of the three files from High Point, from the High Point Jail, violated state law? No, Your Honor. You don't dispute that? No, Your Honor. So you acknowledge that they violated state law, that that violated state law, right? Yes, Your Honor. Okay. Well, that, if we just take those three files, so that act itself, just looking at it, violated state law, how can that be protected activity? Oh, I'm sorry, Your Honor. I think I misunderstood. I thought you were saying that giving the document, giving those three files to the EEOC was... No, I said viewing it. No, Your Honor. We do dispute that. All right. So you dispute whether viewing it violated state law, but you acknowledge that giving it to somebody outside would violate state law? Yes, Your Honor. Well, even if we couldn't ordinarily sever two lawful acts that go hand in hand, how can we give protection to an illegal act going hand in hand with a lawful one? Oh, Your Honor, the law states that, or this court has held... I mean, if it does, I'd be appreciative if you could show me where. Yes, Your Honor. This court has held that even unreasonable and irrelevant activities... But illegal? Illegal would fall under unreasonable, I believe, Your Honor. No, I think illegal is a step further or two. Well, Sister Circuit, the Tenth Circuit, found that providing medical documents to unredacted medical documents in violation of state law to the EEOC was a protected activity, despite being illegal. But even there, the court said that there were limits to that definition and ultimately found against the plaintiff, did it not? It did find against the plaintiff in that case. However, it found against the plaintiff on causation grounds that would not follow under this court's case law. What's the difference? The difference is, in that case, they found that they were able to separate out the two, the policy violation and the EEOC participation. However, this court has stated that that slice is too thinly. But we stated it in Glover, I guess, is what you're referring to in a case where it was just too difficult, where you've got a witness testifying, actually testifying in a deposition, that trying to parse that out was much too difficult. But following up with Judge Motz's question, how is it difficult to parse out a violation of state law from the actual use of the documents? That seems to be a pretty simple line of demarcation. Well, Your Honor, to do that, this court would have to reverse its prior precedent that held that in any matter means, in any matter. But do you think that that precedent meant that even in an illegal manner was protected? See, that's what I was getting at. I think it's hard to read Title VII to say that it protects illegal activity. Well, Your Honor, that presents an issue of conflict of law. According to McCulloch v. Maryland, where Title VII, where a federal law and a state law conflict, the federal law has to prevail. So if Title VII says... If Title VII does protect illegal activity. But of course, if you read Title VII as not protecting illegal activity, there is no conflict. I'm sorry, Your Honor, I didn't hear the last part. Only if Title VII does protect illegal activity is there conflict here between state and federal law. If Title VII doesn't protect illegal activity, there is no conflict. Correct Your Honor. However, it is our position that Title VII's in any manner clause means in any manner. And that includes even unreasonable and irrelevant activity. Could a EEOC plaintiff use perjured testimony, normally perjured testimony in an EEOC case? Would that be protected? From retaliation, Your Honor? Yeah. If it were... Yes, Your Honor. I believe it would be. She would be protected for testifying in an EEOC proceeding. Counsel, I mean, why did you have to go that far? I mean, obviously, Judge Diaz is asking you a hypothetical, but your case is there's nothing wrong with the truth of the documents, correct? Yes, Your Honor. Right. That would be intrinsically the documents that effectively adhere. The question is which would prevail, right, whether it's illegal or not. Maybe you're conceding something that's illegality, but you're saying that the question whether or not the employer committed or violated Title VII is another question. Is that correct? Would that be your position, or what? Yes, Your Honor. All right. Go ahead. And Your Honors, just to back it up, to give, to put all of what we've been discussing in context, protected activities are... I have a question. I'm sorry. Yes, Your Honor. You and your opponent spent a good bit of time trying to, talking across purposes, I thought, as to what test should apply. You suggest that this is a direct evidence case. They say hogwash. This is an indirect evidence case. Does it matter under your theory of the case whether we're talking about direct or have to apply the burden-shifting premise of McDonnell Douglas? Does it matter to your case? Yes, Your... Well, Your Honor, in the long run, I would say no. If you analyze it under either, you would get to the same result. However, the direct evidence is in this case because we have a letter explicitly stating that she was terminated for doing these three protected activities. Except that, as I understand the letter, it was phrased on the premise of doing it, but not because she filed an EEOC complaint or wanted to have her rights vindicated, but because she violated the sheriff's policies and apparently state law as well. So, does that make the case a different case than a typical direct evidence case? No, Your Honor. That's still a pretext, even if you analyze under burden-shifting. The... Again, this is back to that distinct and separable issue, is that she engages in a single act of providing these documents. If defendant couches it in terms of their policy rather than the actual retaliation for actually doing what she... or actually participating, that doesn't make any difference in the long run because she was terminated for doing a protected participation activity. Does it matter in this case that, as I understand it, your client could have had access to these materials via the conventional processes? That is, she could have subpoenaed them before the EEOC and engaged in that kind of help instead of engaging in self-help. I gather, under your theory, the fact that she did it otherwise doesn't make it any less protected because you say it doesn't matter whether it's unreasonable. Is that your view? Yes, Your Honor. So even though there was a process here, that doesn't matter? No, Your Honor. It was still participation in an ongoing title section, which is a protected participation activity. I guess I understand that these hypotheticals are difficult, but I don't exactly see where this ends if every single thing, every single activity, legal or not, is protected in your view when it's done in support of a Title VII claim. And Judge Gregory, my friend Judge Gregory, sort of rescued you from Judge Diaz's hypothetical, but there are lots of hypotheticals that you can talk about. You can talk about instead of taking five files, taking all of the files and giving them to the EEOC and saying maybe they have trade secrets in them. And in your view, that's protected activity? Yes, Your Honor. It is providing evidence to the EEOC as part of an ongoing Title VII investigation. Okay. Well, you're consistent. The issue comes down to if a defendant can separate out a violation of their own policy from the protected activity when the employee only does the protected activity, which violates the policy, then employers could potentially write policies stating that making a discrimination complaint or participating in an EEOC investigation is against policy. And then when an employee engages in that obviously protected activity, they could say, well, we didn't fire them in And I think that's a perfectly fair argument. But of course, that doesn't get to whether the Act violates state law, because the state law isn't written to stop the employee from pursuing Title VII claims. It's neutral. It's out there just as a policy. That's true, Your Honor. However, in this situation, it comes into conflict with Title VII, which provides broadly that participation activities are in any manner protected. Your Honors, netter-participated and protected participation activity. Defendant fired for it. Because the statute says, in any manner, and this Court has said that it means in any manner, defendants cannot fire her for engaging in protected activity. The court below should therefore be reversed and summary judgment should be denied. Thank you, counsel. Mr. Powell. May it please the Court, my name is Jim Powell. I represent Sheriff Barnes. Mr. Powell, plaintiffs can't pursue their case effectively without a comparator, can they? There are more than one way. Comparator evidence is probably, and I would say just generally, 80 to 90 percent of the kind of cases where plaintiffs successfully pursue disparate treatment. Right. This is not a case of they have animus, so they have to show that a comparator is treated differently, correct? That's essential to this case, is it not? There's more than one way. They could demonstrate... I'm asking you, is it essential to this case to have a viable comparator in this case? Yes, it would be. And they have acknowledged that they have no such evidence and don't espouse that they are going under the pretext issue. Well, I thought the whole purpose was to try to show these files that you treated other people differently, isn't it? It is. And they have acknowledged that they have no comparator evidence. The plaintiff has acknowledged that they're not proceeding on a pretext argument and there's no evidence... And so they have to look, correct? They have to look to see, right? They have looked to see. And you say that looking is a violation, that's why you fired her? No, sir. Why did you fire her? Because she accessed documents. Because she took documents in violation of the... I know it's a violation, but the purpose of getting the documents was to try to find a comparator to demonstrate evidence, correct? They're not trick questions, weren't they? Wasn't that the purpose? The documents that she had, I don't... Her purpose, Your Honor, in getting the documents is not the central inquiry in the case. Oh, it's not? No, sir. Oh, I see. So what did you tell me is essential for my decision? First, the essential inquiry is the motivation of the people who made the decision. That's the inquiry about whether their motivation was retaliatory in nature. That is the essential legal inquiry of every discrimination case. No, but here you rested somewhat on a violation of your policy, correct? The violations of the policy was taking documents to which she had limited authorized access, but giving those documents outside the sheriff's office without authorization. And is an intent involved in that policy violation? For example, you certainly wouldn't say if she made a mistake and left the document out and went and got a cup of coffee or something and someone saw them that that would be a violation, correct? There are certainly cases. So intent is important, is it not? Yes, and the plaintiff in this case demonstrated the intent by deliberately removing them and acknowledging two things. But what purpose? Her purpose was to support her EEOC charge, to support her claim of discrimination. Can you just say to me, I think I understood you to say that she was fired from her position because she violated an employer's policy that she not go into these personnel files for other people. Is that correct? Not to go into them, but to remove those files for her own purposes, personal purposes. Let me restate it then so we can be sure that we're on the same page here. She was fired. She was removed because she accessed personnel files and removed them for her own purposes. For her own purposes. That's what I just said. And without authorization. Without authorization. Without authorization. Well, I think that I will go back to what your colleague said in his argument to us, that we allow these sort of Title VII claims under the statute of any sort of evidence. I've forgotten what our magic words are. I believe it's in any manner. I believe it's what the statute said, Your Honor. Sorry? I believe the statute says in any manner. Yes. Anticipating in any manner. And we've interpreted that in a very broad way, haven't we? It is appropriately interpreted in a broad way. So, speak to me about that. You can't just have an employer's policy that the employer sets up and then says a violation of that can't go to, evidence can't go to EEOC. That would be contrary to the statute. If the policy had said, as Mr. Plaintiff's counsel had indicated, if the company or any company adopted a policy that says you cannot participate in an EEOC investigation. It doesn't have to say that. That would be facially unlawful. Because it says in any manner. That's what the statute says. What the plaintiff here at most has would be is a prima facie case. That's at most. There are two lines of cases, as we have discussed in our brief. There are two approaches that the courts across the United States have taken when they've looked at the unauthorized disclosure of confidential documents. There is a line of cases which have said clearly that the use of confidential information is not protected under the statute. And that's the approach the Sixth Circuit has taken. That is an approach the Seventh Circuit has endorsed. There is a separate approach that's been taken by the Tenth Circuit, which I believe is closer to what the Fourth Circuit has taken. And that is using the documents in the course of a supporting a discrimination claim is a protected activity. But that only goes to the prima facie case. And the Vaughn case, which is a Vaughn versus Epworth Village case, which is cited by both parties in this lawsuit, said that gets the plaintiff to the first part. And that is a prima facie case. From my point of view, this case involves nothing more but the application of what are traditional, standard McDonnell-Douglas principles to undisputed facts. Well, instead of going out of circuit, what about the Laughlin case from this circuit? The Laughlin case, thank you, Your Honor, because I think the Laughlin case actually touched on what you and Judge Diaz had actually mentioned in your comments. And that is, how does Title VII authorize illegal activity? That's the very first question I asked you. Yes. You are not keying into illegal activity. You said that your client fired this woman because she violated its policy. Not illegal activity, but the policy of the employer. That's what you said, sir. I believe I corrected and said, and state law, because that is what is in the documents themselves. But the Laughlin... Well, I read your papers, and I thought I heard you say that a violation of your policy alone constituted a basis for firing her. Is that your position, or is it not? It is both, that she violated state law and the policies on confidentiality. If it was just the policy, would your firing be justified? Yes, it would. Okay, well, explain to me how you would do that under Laughlin. Under Laughlin? Well, the point under Laughlin is that even though the employer in that case, in the court... Had breached her employer's trust by copying confidential material and sending it to an outside party. Yes, and what the court... Right, and the behavior here was violating the policies on confidentiality, long-established policies. Policies which apply across the board. That means that Title VII started because of policies of discrimination that occurred in our country a long time ago. Why were you going with a long-time established? What does that mean? I apologize. You said just because the policy is long-established, that means something. It means there's a policy that has neutral application to everyone. Or does it? We don't know that. That's one of the questions in the comparative case. Well, this is a case where the plaintiff says they have no comparative evidence. And they have not attempted to make any comparative evidence. So you're saying that if it turns out this was fruitful, it wouldn't be a violation, you couldn't fire her? I apologize. If it was fruitful as to finding comparators that were treated differently, then there would be no basis for firing her. I thought I made that clear. If the plaintiff had... This policy has been applied mutually. If the plaintiff could come into court and to say that other people had done the same thing, even though it's illegal, but if other people had done the same thing, then she could then show that pretext, that other people were treated differently. That would be valid evidence of showing pretext. And notwithstanding that the accessing was violation, violation of a policy or even the law, correct? That would be correct. Okay. That would be correct, if she could. But she has disavowed entirely that she has any such evidence. And that's based on the facts of this case. That's based on the facts of this case. How far you think they'll carry their burden in the facts. That is true. They've disavowed any evidence of pretext and said they have none. And have come to this court and saying they're not even making a pretext argument. Mr. Powell, do we have to overrule or be in conflict with our decision in Glover to decide this case? No, sir, your honor, you do not. How do we reconcile this? It's not a reconciliation. It's almost a direct application. Now, the Glover case does involve some fairly unique facts. Unique facts where the individual, Ms. Glover, actually represented with the South, was employed by a South Carolina law enforcement agency known as SLED. But she was called to testify in connection with a lawsuit in South Dakota back at a time when she worked for the U.S. Marshal's office. And what happened was, during the course of that testimony, which had nothing to do with SLED, she apparently made very disparaging remarks about her successor as U.S. Marshal. Accusing her of any number of things which the court said, by any standard, was probably unreasonable. Right, but I guess the point is, it seems to me that in that case, it would have been not too difficult to sever those kinds of gratuitous remarks from the bulk of her testimony which was relevant to the claim. And yet the court said, we're not going to do that. The court said it was virtually impossible to do because what happened was, the Marshal was infuriated, I think justifiably in terms of what I read it. Well, your client is pretty unhappy here too, right? No, there's no evidence that our client was infuriated. They fired her. No, sir, there's no evidence that our client was infuriated. In fact, I would point to that Ms. So someone has to be infuriated in order to make out a retaliation claim? They may have to be infuriated to make it, but there's no evidence that this client was infuriated. You can be a dispassionate, immovable, unemotional employer and fire people at will and you're okay? Well, no, they fired people, she was fired because there was a proper investigation that revealed that she violated the law, she violated the conference promises. Well, infuriated isn't an element of it. I apologize. That doesn't matter one way or the other. I mean, you can make an argument that a cold-blooded decision is more damaging or more evidence of Title VII violation by an employer than being infuriated. I mean, I don't understand why you are holding back on that. What difference does that make? But simply, there's just simply no evidence in the record about this. What I would point out. But what difference does it make whether there's evidence on that point? It doesn't go anywhere. It does not show that she was treated any different than anyone else. What I was going to say about the Glover case, Your Honor, is that in that case, the South Carolina Law Enforcement Agency got a complaint from the Marshal Service and the South Carolina Law Enforcement Agency acknowledged that one of the reasons that she was terminated was because of the exercise of poor judgment in how she handled herself in the deposition. But that's what the court said. We can't separate out and parse her deposition testimony. The court in Glover went on to say and cited with approval that there are other cases which they cited with approval and went to great length to distinguish and cite other cases where people have engaged in protected activity, participatory activity, and were justifiably fired because those actions were separate and distinct. But what is the gravamen of the violation? Is it the accessing the information, correct, not just the physical file, correct? It's accessing and disclosing that information. Right. So that would be the same thing looking at them and telling somebody what you saw in them. That would be a violation, correct? They, no, I believe that the statute here is talking about the unauthorized disclosure. She was not, nor any employees. But that's my question. Does disclosure, unauthorized disclosure include the information being disclosed? Not just the physical files. For example, I read them and then I go to the next person and say, guess what I heard? I read it. Isn't that a part of it? The disclosure itself is really the gravamen of the offense. In other words, that demonstrates how closely they are linked, how they're not separable. There's no evidence here about that she was discharged because she talked about this to somebody. What if she had a photographic memory and simply memorized the contents of these files and then testified to those contents in the EEOC proceeding? What's the result in that case? Then she would not have disclosed those files because the statute itself. Wouldn't the harm be the same? The harm theoretically would be the same. It's simply not the facts of this case. Why wouldn't that be disclosure? The disclosure is taken, the statute itself talks about the unauthorized taking and disclosure and copying of the files. So she had to copy the files to violate the statute. No, no, no. We're talking about under the EEOC. She would have made the same disclosure in furtherance of her EEOC claim, right? I'm not sure that that could be said because here. Why not? Well, here is 60 pages of documents. But you have to go with the hypothetical you were given. She has a photographic memory. A photographic memory? Uh-huh. If she were to disclose confidential information in those files, that would be an unauthorized disclosure. But see, that's where it's muddled in. But it's inseparable. That's the point we're all getting at. With due respect, Your Honor, this same case, and I know that it's not binding on this court, but I think it is instructive of this court, is virtually the same that was decided by the Tenth Circuit, which did look at these circumstances. And these circumstances were this. An individual had access to medical records. In support of her charge of discrimination, she provided unredacted medical records and gave them to the EEOC. The Tenth Circuit said that is a participation activity and deemed it protected. But the court said that does not end the inquiry because that establishes a prima facie case. Under McDonnell-Douglas, you go to the next stage, which is, has the employer articulated and given a legitimate reason for the termination of the person? And the Tenth Circuit said, yes. The disclosure of confidential information in violation of policies, in violation, in that case, of state law, and in that case because it was medical records themselves, in violation of federal HIPAA law, is a legitimate reason for the company to make that decision. It became then the plaintiff's burden to demonstrate pretext, and they had none. And that is the approach used by the Tenth Circuit. I would say that that is close to the same approach used by the Glover case by the Fourth Circuit. Well, the problem is, Mr. Powell, with all due respect to my great colleagues in the Tenth Circuit, that brings a problem in terms of you. Hypothetically, the employer always has a motive to draw a very strict or broad interpretation because it favors you because you now have an independent reason to fire them. Always. And what motive is always there? Would be, wouldn't it? Your Honor, and then the, that's what we say is that this case does, is a traditional McDonnell-Douglas standard, and then the plaintiff has the opportunity. Yeah, but the point is that since you always have the motive, then we have to look very carefully at what was really done. And it's really the disclosure of something that could have been disclosed anyway. And it wasn't broadly, it wasn't broadcast on the news. It was brought to agencies and persons who had the right to know or need to know basis. So don't we have to balance that? You always have a motive to have that reason and enforce it because, aha, now I can fire you. No retaliation. I'm not talking, you see what I'm saying? That's the balance. Should we look at that? Because not just this case, Fourth Circuit, these Title VII cases, retaliation cases happen all the time. Why shouldn't we be sculpting with a fine point here and not with a meat cleaver like, oh, policy, falls off. No, the policy should not fall off. No, no, I know that. The claim falls off. The claim falls off. Oh, violation of policy. No, we have to go, wait a minute, before the meat drops on the floor, let's see what is connected, what sinews, what bones and muscles and vessels and those things are there that get to the purpose of Title VII. And that's where we say that the plaintiff has the burden in this case to demonstrate that the reasons given were false. And the way she proves discrimination or retaliation in this case is the same way she would prove retaliation or discrimination in any case. She has the opportunity to challenge the reasons given. She has the opportunity to say that there are other people who did the same thing and were not treated the same. And there's no evidence of that in this case. If I may summarize, Your Honor, this case is a straightforward application of Title VII McDonnell Douglas standards. The facts are not disputed. This is not a direct evidence case. And the plaintiff's unauthorized disclosure of confidential information was acknowledged and acknowledged to be in violation of state law. Thank you. Thank you, Mr. Fowler. Mr. Fowler, you have some time reserved. Your Honors, the defendant has just spent a lot of time making the wrong argument. Again, a prima facie and burden shifting at McDonnell Douglas do not apply. Quote this court in Foster v. University of Maryland Eastern Shore, It is left to the plaintiff's discretion whether to proceed by direct and indirect evidence or by means of the McDonnell Douglas burden shifting framework. All of this evidence or all of this talk about disproving the employer's legitimate reason is unnecessary because in this case we have a document which says that Ms. Nutter was terminated for giving documents to the EEOC, giving documents to the Human Resources Investigator, and giving documents to her Title VII attorney. The burden shifting is not necessary. Again, the defendant also misapplies the distinct and separable concept of Glover. Distinct and separable means that there is a different act that the employee engaged in. I went through in my primary case, Jackson v. St. Joseph State Hospital and Jones v. Flagship International, the two cases that Glover itself cites when explaining the distinct and separable idea. And in each of those, there were a protected activity and then a separate act that the employee engaged in. In this case, there was a single act that both violated the policy and was a protected activity. To the extent that that act also violated state law, again, under the Supremacy Clause, when federal law says that it bars termination for participation activity and the state law says that you can't take the documents, the federal law has to prevail when those two conflict. The defendant further suggests that the court separates the two, but this court has specifically refused to do exactly that. To quote Glover, To dissect Glover's deposition in this fashion would be to slice things much too thinly. In essence, the employer's argument is an attempt to bring through the back door the reasonableness requirement for Title VII testimony that we have already rejected. And Your Honors picked up on this, that the disclosure itself would have to be made, even if she did not provide the documents. Having to distinguish between one kind of disclosure and another kind of disclosure is slicing too thinly. This is the main problem with the defendant's argument. It tries to bring in a reasonableness test where this court has expressly rejected a reasonableness test. In particular, the defendant has tried to convince the court to adopt the Sixth Circuit's miswandering test, in addition to being non-binding and out-of-circuit. It's completely opposite of what this court's strong assertions were in Glover. Again, to quote, Glover also said that our holding does not permit employees to immunize improper behavior simply by filing an EEOC complaint. Isn't this improper behavior? No, Your Honor. At a minimum, it's if not unlawful, illegal. In this case, Your Honor, because it is protected activity under Title VII and Title VII takes precedent, it is proper and it was made in good faith. However, to that point, what Glover was describing was a fairly common practice of employees feeling their time coming for doing something else or filing an EEOC complaint and then doing something that is against policy thinking that they're immune. Employees are not immune just because they file an EEOC charge from violating policies or however. Yeah, I get that. I guess what troubles me about this case, and I understand that it's difficult to analyze this in the context of not having a reasonable standard, but I asked you earlier whether there was a process, a proper process that your client could have gone through to receive and obtain these documents. And I think there was. I think there was a subpoena process that she could have engaged in. And I guess your response to me is going to be, well, that doesn't mean that her method was unreasonable per se, but that's the problem with these kinds of cases is you say, on the other hand, that an employee can't, is not completely immunized, but where do we draw the line? And you say, well, I'll let you answer. Where do we draw the line? Good faith, Your Honor. She's participating in good faith, which here she was. Well, I think a plaintiff participating in good faith would have utilized the processes available to her, including the subpoena process. Well, Your Honor, I'm a little confused about, are you talking about the subpoena process in district court? No, no, in the EEOC. I think the EEOC has subpoena power. I'm not sure that, well, the EEOC does, but a charging party doesn't really have direction over what the EEOC can do. They can't tell the EEOC to subpoena somebody. Oh, they can request the documents. You don't get to see the documents, though, do you, when you're a plaintiff in the EEOC? Correct. The documents they get from the employer. That's correct. And also, even in accessing discovery, you could say, if you saw it in just the names, and you said, okay, this is what I want. They say, oh, you picked those people and files you want us to discover because you found that out, and that could be a disclosure problem, couldn't it? Yes, Your Honor. That's how you found out, because you looked in and found their names, so even that would not insulate you from the same policy type thing. That's why it's inextricably combined. Yes, Your Honor. That's why it's full circuit and wisdom saying it's not about any manner. Any manner, that is correct, Your Honor. Your time is up, unless my colleague... One question. Could you help me? Is the document that said JA 142 through 144, is that the fullest explanation of the reasons why your client was fired? Yes, Your Honor. Statement of charges? Yes, Your Honor. The termination documents themselves just cite the provisions that are there on the first page of 142. All right. Thank you, Mr. Fong. Thank you, Your Honor. We'll come down and greet counsel, and then we'll take a five-minute recess.
judges: Roger L. Gregory, Diana Gribbon Motz, Albert Diaz